Filed 11/10/21  P. v. Rivas CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DANIEL MENDOZA RIVAS,<br><br>Defendant and Appellant. | F081800<br><br>(Super. Ct. No. CF03907984)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Adolfo M. Corona, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John Merritt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*     Before Hill, P. J., Levy, J. and Smith, J.

Defendant Daniel Mendoza Rivas pled no contest to misdemeanor child abuse in 2004. In 2019, while defendant was in custody on an unrelated matter, he filed a motion to vacate his child abuse conviction pursuant to Penal Code section 1473.7, subdivision (a)(2)[1] based on purportedly newly discovered evidence. The trial court denied his motion. On appeal, he contends this was error. The People respond that the trial court's conclusion was correct because (1) defendant was not reasonably diligent in discovering the purportedly new evidence and (2) the evidence does not show that he was actually innocent of the charged offense when considered in light of all of the evidence. We affirm.

## PROCEDURAL SUMMARY

On November 25, 2003, the Fresno County District Attorney filed a complaint charging defendant with child abuse (§ 273a, subd. (a); count 1) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 2).

On October 15, 2004, the trial court granted the People's motion to reduce count 1 to a misdemeanor and accepted defendant's plea of no contest to count 1, as amended, pursuant to a plea agreement. Also pursuant to the plea agreement, the trial court dismissed count 2 on the People's motion. On count 1, defendant was granted a four-year term of probation with conditions requiring him to serve 210 days in jail and complete a 52-week child abuse treatment program.

On September 3, 2019, while in custody on an unrelated matter, defendant filed a motion to vacate his conviction with the trial court, which the trial court construed as a motion pursuant to section 1473.7, subdivision (a)(2). On August 20, 2020, after the parties had fully briefed the issue and the trial court had held two hearings, the trial court denied defendant's motion.

On September 23, 2020, defendant filed a notice of appeal.

---

**1** All further statutory references are to the Penal Code.

2.

## FACTUAL SUMMARY

### The Police Reports[2]

Defendant was previously married to Melissa R. They shared a child, E.R., who was approximately six months old in August 2003.

On August 19, 2003, at around 1:20 p.m., Melissa R. and her boyfriend, Hector C., left the apartment they shared and walked East. Hector was pushing a stroller with E.R. seated inside. As they walked, Hector saw defendant, who he knew to be Melissa's ex-husband, talking to someone on the opposite side of the street. As Melissa, Hector, and E.R. approached the next intersection, defendant approached them from behind and struck Hector in the back of his head. Hector fell to the ground and lost consciousness. As Hector fell, the stroller overturned and E.R. fell onto either the sidewalk or the street. She suffered a bruise that was roughly three inches in diameter and an abrasion, both on the left side of her forehead. She was treated by paramedics in the back of an ambulance on scene and her injuries were photographed. She was then transported to the hospital for further medical evaluation. Hector also suffered swelling behind his right ear and complained of pain to the area.

Officers also noted that E.R.'s drinking cup had "signs of grass and debris" on it that were consistent with it having fallen onto the freshly mown grass near the location of the assault.

### Melissa's Declarations[3]

---

[2]    This portion of the factual summary is drawn from police reports summarizing the officers' investigations and the witness statements by Hector and Melissa.

[3]    This portion of the factual summary is drawn from Melissa's declarations dated March 1, 2019, August 16, 2019, and December 30, 2019. The August 16, 2019 declaration was submitted in support of defendant's motion; the March 1, 2019 declaration was submitted in support of the People's opposition to defendant's motion; and the December 30, 2019 declaration was submitted in support of defendant's reply in support of his motion.

On August 19, 2003, Melissa and defendant had an agreement by which defendant was permitted to see his daughter. Defendant called Melissa's telephone to ask to see E.R. and Hector answered. Hector shouted at defendant. Twenty minutes later, Melissa and Hector began walking to the grocery store. Melissa pushed E.R. in a stroller. Defendant approached Melissa, Hector, and E.R. and began to argue with Hector. Defendant punched Hector in his shoulder. At the time of the physical altercation, Melissa and E.R. were not standing near enough to Defendant and Hector to be in any danger. E.R. remained in the stroller and did not fall to the ground. No injuries were suffered by any person as a result of the altercation.

Melissa denied having made the statement to officers on August 19, 2003, reflected in the police reports. The only comment she made to officers was that she was unaware of how E.R. was injured because she remained in the stroller during the physical altercation.

## DISCUSSION

The trial court denied defendant's motion to vacate, finding that he was not diligent in obtaining the newly discovered evidence—Melissa's declarations—and that the evidence did not show that he was actually innocent because they were inconsistent with the other evidence. Defendant contends that the trial court's conclusion was error. The People disagree, as do we.

### A. Additional Background

On or about August 10, 2018, defendant was advised by the Department of Corrections and Rehabilitation (CDCR) that he was not permitted to have visits with E.R. because of his misdemeanor child abuse conviction. Defendant represented that before that time, he was housed in a different CDCR facility that did not enforce the same restriction. CDCR maintained that defendant was subject to the same restrictions since

May 21, 2013.**4** Defendant unsuccessfully attempted to challenge the CDCR's determination through CDCR's administrative grievance process at least twice, starting in 2019.

On September 3, 2019, defendant filed the instant pro se motion with the trial court and attached as an exhibit a declaration by Melissa dated August 16, 2019. On October 4, 2019, the People filed an opposition and attached as an exhibit a declaration by Melissa dated March 1, 2019, police reports, and photographs depicting E.R.'s injuries. On December 31, 2019, defense counsel submitted a reply and attached as an exhibit a declaration by Melissa dated December 30, 2019.

On March 9, 2020, the trial court held a hearing at which it expressed a concern regarding timeliness in bringing the motion because of the lack of "due diligence" in discovering the evidence contained in the declaration. The court revisited the issue on August 20, 2020, again identifying that the "issue is [whether the evidence is] newly discovered evidence." The court concluded that the evidence presented could have been discovered earlier with the exercise of due diligence and that the "physical evidence does[ not] jive with the declaration." It therefore denied defendant's motion.

### B. Legal Framework

Section 1473.7, subdivision (a)(2) permits "[a] person who is no longer in criminal custody to file a motion to vacate a conviction or sentence" if "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." The moving party bears the burden of proving entitlement to relief by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *People v. Perez* (2020) 47 Cal.App.5th 994, 997.) A motion pursuant to section 1473.7

---

**4** At the August 20, 2020 hearing on defendant's motion, defense counsel mentioned that defendant had "known about the no[-]contact visits since 2013 and from the prison … ha[d] been trying to reach out to [Melissa] to get the truth from her about what [had] really happened" on the date of the offense.

must "be filed without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief …." (§ 1473.7, subd. (c).)

In reviewing a denial of a motion pursuant to section 1473.7, we apply the independent standard of review, whereby we "exercise[] [our] independent judgment to determine whether the facts satisfy the rule of law." (See *People v. Vivar* (2021) 11 Cal.5th 510, 526–527 [reviewing denial of a section 1473.7, subd. (a)(1) motion pursuant to the independent review standard].)[5] Under that standard, an appellate court must give deference to a trial court's "factual findings based on the trial court's personal observation of witnesses," but "[w]here, as here, the facts derive entirely from written declarations and other documents," no deference is required. (*Vivar*, at pp. 527–528.)

## C. Analysis

Here, defendant pled no contest to misdemeanor child abuse (§ 273a, subd. (a)) in 2004.[6] He did not attempt to obtain the purportedly newly discovered evidence until 2013. Defendant did not obtain the evidence until March 2019 and did not seek relief until September 2019. Defendant suggests that prior to Melissa providing her March 1, 2019 declaration to him, the information contained in that declaration was unavailable to him because Melissa was unwilling to be truthful about the events underlying the

---

[5]     We recognize that, after *Vivar*, some courts have limited application of the independent review standard to reviewing denial of section 1473.7, subdivision (a)(1) motions, and have continued to apply a mix of the abuse of discretion and de novo review standards to denial of section 1473.7, subdivision (a)(2) and (a)(3) motions. While we believe the independent review standard applies to all motions pursuant to section 1473.7, we would affirm under any standard.

[6]     A defendant violates section 273a, subdivision (a) when he or she, "under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered …."

conviction. Under defendant's reasoning, the evidence was newly discovered because the statements made in the declaration had previously been withheld from him and his motion was timely because he filed his motion promptly after he obtained the declaration. He further contends that Melissa's declaration conclusively proves his innocence and should be believed over the other evidence in the record.

We need not determine whether defendant's motion was timely or whether it was based on newly discovered evidence because defendant did not meet his burden to prove eligibility for relief by a preponderance of the evidence.

Here, Hector said he was pushing E.R.'s stroller when defendant struck him in the back of the head. Police officers contacted Melissa when she was in the back of the ambulance with E.R., who was receiving treatment for a bruise and an abrasion suffered to her forehead. Despite Melissa's statement to the contrary, the police reports indicate that Melissa told officers that when defendant hit Hector, Hector fell into the stroller, knocking it over and causing E.R. to fall to the ground. Melissa told officers that E.R. had "a large bruise on her forehead." The police reports reflect that E.R. was thereafter transported to the hospital. The photographs contained in the record and reviewed by the trial court supported the accounts given to the police on the date of the offense regarding E.R.'s injuries.

We agree with the trial court's assessment that Melissa's declarations from 2019 were inconsistent with the evidence. Specifically, in the March 1, 2019 declaration submitted by the People as an exhibit to their opposition, Melissa indicated defendant "punched Hector in his shoulder," rather than his head; and the altercation did "not cause[] injury or any harm to the alleged victim, [or] to [E.R.]." Melissa further denied ever having told the officers that E.R. fell to the ground, however she provided no other explanation for E.R.'s injuries on the date of the offense. Melissa's declarations were simply not credible in light of the evidence in the record, the inherent untrustworthiness

of recanted witness statements (*In re Weber* (1974) 11 Cal.3d 703, 724–725; *People v. Minnick* (1989) 214 Cal.App.3d 1478, 1482), and Melissa's apparent motive to recant her prior statement to allow E.R. to have prison visits with defendant.  Exercising our independent judgment, we conclude defendant did not carry his burden to establish his actual innocence by a preponderance of the evidence.  For that reason, we affirm.

## **DISPOSITION**

The judgment is affirmed.